UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOHN C. DOUGLAS,<br><br>                    Petitioner,<br><br>v.<br><br>TYRELL DAVIS,<br><br>                    Respondent. | Case No. 1:24-cv-00391-DCN<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

**INTRODUCTION**

In 2016, Petitioner John C. Douglas was convicted of two counts of first degree murder and one count of attempted first degree murder in an Idaho state district court. He was a co-defendant with accomplice Anthony Robins, whose conviction was reversed on direct appeal for the prosecutor's violation of the attorney-client privilege and the trial court's failure to hold a *Kastigar*[1] hearing, a claim common to both cases. However, Petitioner's trial counsel did not join Robins' motion or raise the claim for Petitioner. Nor did Petitioner's initial post-conviction counsel bring the claim. When Petitioner's successive post-conviction counsel raised the claim for the first time about three years and eight months after Robins had filed his motion, the Idaho Court of Appeals held that the claim was untimely.

---

[1] *See Kastigar v. United States*, 406 U.S. 441 (1972), holding that the remedy for a violation of the attorney-client privilege is a hearing in the district court to determine whether the State can establish an origin for its evidence and trial strategy independent from any information obtained as a result of the attorney-client privilege violation.

Petitioner then filed this federal Petition for Writ of Habeas Corpus, asserting a Sixth Amendment ineffective assistance of counsel claim for defense counsel's failure to raise the *Kastigar* claim. Dkt. 1 at 6.

Now pending is Respondent Tyrell Davis's Motion to Dismiss the Petition on untimeliness and procedural default grounds. Dkt. 10. The Court has reviewed the parties' briefing, read the state court record, conducted its own research, and considered whether appointment of counsel for Petitioner would aid in the decisionmaking. For the following reasons, the Court concludes that the Petition was filed beyond the federal statute of limitations and no exception applies to permit the Court to hear the claims. The Court does not reach the procedural default issue because, even if Petitioner could overcome the procedural default, his Petition would still be barred by the statute of limitations.

### REVIEW OF REQUEST FOR APPOINTMENT OF COUNSEL

Petitioner requests appointment of counsel, because he has no legal training or resources. Dkt. 12. There is no constitutional right to counsel in a habeas corpus action. *Coleman v. Thompson,* 501 U.S. 722, 755 (1991). The habeas rules require appointment if counsel is necessary for effective discovery or an evidentiary hearing is required in the case. *See* Rules 6(a) & 8(c) of the Rules Governing Section 2254 Cases. In addition, the Court may exercise its discretion to appoint counsel for an indigent petitioner in any case where required by the interests of justice. 28 U.S.C. § 2254(h); 18 U.S.C. § 3006A(a)(2)(B). Whether counsel should be appointed turns on a petitioner's ability to articulate his claims in light of the complexity of the legal issues and his likelihood of success on the merits. *See Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983).

The Court has reviewed the state court record to consider whether the procedural issues appear straightforward or whether discovery or an evidentiary hearing is required. *See* Rules 6(a) & 8(c) of the Rules Governing Section 2254 Cases; 28 U.S.C. § 2254(h); 18 U.S.C. § 3006A(a)(2)(B); *Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983). The procedural issues are well-defined and not legally complex. The petitioner's responsibility is to bring forward facts supporting timeliness or tolling. Here, the state district court made extensive findings of facts that are relevant to the timeliness issue, and nothing in the records suggests that the findings are clearly erroneous, or that other facts exist to support a different outcome. For these reasons, the Court concludes that additional briefing from counsel would not aid in the decisionmaking in this case. The Court will deny Petitioner's request for appointment of counsel.

## STATE COURT PROCEEDINGS

The chronology of Petitioner's and Robins' intertwined Idaho criminal cases is as follows:

| | |
|---|---|
| 2014 | Petitioner was charged with murder. State's Lodging E-1, *State District Court Findings of Fact* at 526. |
| 2015 | Robins was charged with aiding and abetting Petitioner, and the two cases were consolidated for trial. *See id*. |
| 05/14/2015 | Jail staff searched Petitioner's and Robins' cells and confiscated notes intended for their defense attorneys; jail staff forwarded the notes to the prosecutor. *Id*. at 525. |
| 05/21/2015 | Robins filed a motion and memorandum for "Order to Show Cause and for other Appropriate Relief to Address State's Invasion of Attorney Client Privilege" (Robins Motion). *Id*. |

09/23/2015    Petitioner and his attorneys were present at the hearing on the Robins Motion. Despite the similarities between the nature of the co-defendants' notes, Petitioner's counsel did not join in the Robins Motion or pursue any relief for the attorney-client privilege invasion. *Id*. at 526. The state district court held the notes were attorney-client privileged and ordered the State to turn over any and all copies it had of the notes and any writings, emails, or notes generated or produced in relation to the notes. The Court held that the State was prohibited from using the notes during trial and that Robins could object to evidence or argument believed to be obtained from the notes, and the State would have the burden of showing that such evidence or argument was obtained separate and apart from the notes.

1/28/2016    After a jury trial at which no attorney for either defendant made any objection about use of the notes, the jury found both defendants guilty of all charges against them.

8/23/2016    Petitioner's judgment of conviction was entered.

10/3/2016    Petitioner filed a pro se notice of direct appeal, and the state appellate public defender was appointed.

6/22/2016    Robins filed a direct appeal asserting that seizure of his jail notes should have prompted the state district court to hold a *Kastigar* hearing rather than to require Robins to bear the burden of objecting at trial.

1/11/2018    The Idaho Supreme Court affirmed Petitioner's judgment of conviction on direct appeal. State's Lodging B-4.

2/7/2018    Petitioner filed his first post-conviction petition. State's Lodging C-1 at 5-11.

2/21/2018    Petitioner was appointed counsel, who filed an amended petition that did not assert that trial counsel was ineffective for failing to join the Robins Motion. *Id*. at 30-33.

7/3/2018    The state district court dismissed Petitioner's first post-conviction petition. *Id*. at 95-110.

| | |
|---|---|
| 8/2/2018 | The Idaho Supreme Court issued a decision vacating Robins' conviction and remanding for a *Kastigar* hearing on the issue of the proper remedy for the State's seizure of his handwritten notes and invasion of the attorney-client privilege. State's Lodging E-1 at 530; *see State v. Robins*, 2018 WL 3651431 (Idaho 2018) (withdrawn). |
| 8/2018 | Petitioner placed phone calls from prison on August 7, 12, 16, 19, and 23, "in which he discussed Robins' conviction getting overturned by the Supreme Court," showing he "knew that what happened to Robins also happened to him and understood it was an issue that could call into question his conviction." State's Lodging E-1 at 530. Petitioner also "indicated he had either already talked to his lawyer or was going to talk to his lawyer." *Id*. |
| 11/2018 | John Kormanik began representing Petitioner in a prospective successive post-conviction action. State's Lodging E-1 at 530. According to Kormanik, initial post-conviction attorney Greg Silvey "contacted him about representing Douglas," and that "Douglas would need to be represented due to the Supreme Court decision in the Robins case." Kormanik sent a letter to Petitioner. *Id*. at 530-31. |
| 12/2018 | Petitioner and Kormanik met in person, or "spoke … over the phone," and Petitioner "told Kormanik that neither" trial attorney "ever discussed pursuing a potential remedy with respect to the seizure of his notes." *Id*. "Kormanik began preparing the instant successive petition." *Id*. |
| 11/30/2018 | The Idaho Supreme Court superseded the prior opinion in *Robins* and replaced it with a corrected version that did not alter the relief granted. *State v. Robins*, 431 P.3d 260, 272 (2018). |
| 12/20/2018 | With the help of Silvey, Petitioner filed a motion to voluntarily dismiss his first post-conviction appeal with prejudice, and the appeal was dismissed. State's Lodging D-1, D-2, D-3. |
| 12/21/2018 | The Idaho Supreme Court issued its remittitur. State's Lodging D-4. |
| 6/7/2019 | Kormanik filed a successive petition for post-conviction relief. State's Lodging E-1 at 11-18. The amended successive petition raised a single |

claim that Petitioner's trial counsel were ineffective because, although they were present at the hearing on the Robins Motion, they "did not request any relief in the trial court for the invasion of the attorney-client privilege by the seizure of protected notes from Mr. Douglas's cell at the Ada County Jail." State's Lodging E-1 at 167.

9/18/2019     The state district court in Robins' case issued an order after a three-day *Kastigar* evidentiary hearing. The court "concluded based on the evidence presented that the State met its burden by a preponderance of the evidence that the evidence it presented at trial, and its trial strategy, derived from an origin independent of Defendant's notes. The Court further concluded that the Defendant received a fair trial and was not prejudiced by the State's discovery of the notes, because none of the State's evidence or strategy was derived from the notes." *See* Ada County Case No. CR-FE-2015-126, *Idaho v. Robins*, *Abstract of Decision*, available at preview.icourt.idaho.gov (accessed 2/25/2026). The case was set for a new trial, but later settled.

7/8/2022      The state district court held an evidentiary hearing on timeliness at which Kormanik testified. He represented Petitioner from November 2018 to November 2021. *See* State's Lodgings E-1 at 410, 530; E-2 at 163. When asked to explain the filing delay, Kormanik testified that "it had to do with the logistics in gathering Douglas's case files from prior attorneys, wanting to be as thorough as he could to bring a strong petition, and at the same time, he was dealing with other obligations, including a heavy caseload with other clients who were facing the death penalty." State's Lodging E-1 at 532. The court found that the claim "was raised three years and eight months after the earliest time" Douglas "had knowledge of his claim"—the 2015 Robins Motion hearing— and "10 months after [Douglas] knew, not only the facts for his claim, but the specific remedy." *Id*. at 532. This conclusion is consistent with Petitioner's substantive claim and Kormanik's opinion that "Douglas's trial attorneys in 2015 should have sought the same relief" as Robins, and "Douglas's attorneys had sufficient information in 2015 to file for that same relief." *Id*. at 531.

5/2/2024      The Idaho Court of Appeals held that "[t]he district court did not err when it dismissed Douglas's successive post-conviction petition on

the grounds that the claim could have been raised in Douglas's first post-conviction petition and it was not filed in a reasonable time." State's Lodging F-4 at 9. Dismissal of the successive petition for post-conviction relief was affirmed.

2024      Petitioner's petition for review was denied by the Idaho Supreme Court, thus concluding state court proceedings on the *Kastigar* claim. *See* State's Lodging F-7.

## DISCUSSION OF STATUTE OF LIMITATIONS ISSUE

### 1. Statute of Limitations Standard of Law

The Petition is governed by Title 28 U.S.C. § 2254(d), *et seq*., as amended by the Anti-terrorism and Effective Death Penalty Act of 1996 (AEDPA). A federal habeas corpus petition must be filed within one year from several triggering dates specified in 28 U.S.C. § 2244(d)(1)(A)-(D). *One year* means 366 days, for example, from January 1, 2000, to January 1, 2001. *See Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001) (applying Federal Rule of Civil Procedure 6(a) to AEDPA)).

The most common trigger is the first one, "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). When the Idaho Supreme Court issues a decision or denies a petition for review of an Idaho Court of Appeals decision, and a petitioner does not file a petition for writ of certiorari with the United States Supreme Court, finality occurs 90 days later after the opinion or denial. *See* United States Supreme Court Rule 13. "Finality" is measured from entry of the final judgment or order, not from a remittitur or mandate, which are mere formalities. *Gonzales v. Thaler*, 565 U.S. 134, 149-150 (2012); *Clay v. United States*, 537 U.S. 522, 529 (2003); *Wixom v. Washington*, 264 F.3d 894, 898

n.4 (9th Cir. 2001).

AEDPA also contains a tolling provision that stops or suspends the one-year limitations period from running during the time in "which a properly filed application for State postconviction or other collateral review ... is pending." 28 U.S.C. § 2244(d)(2). Because this particular statutory provision applies only to "pending" actions, the additional 21-, 42- and 90-day time periods associated with the calculation of finality after direct appeal are *not* applied to extend the tolling periods for post-conviction actions. However, unlike direct appeal "finality," the term "pending" *does* extend through the date of the remittitur.[2]

The federal statute is *not* tolled between the date the direct appeal is "final" and the filing of a proper post-conviction application, or between post-conviction finality and any successive collateral review petition. *Id*. Each time statutory tolling ends, the statute of limitations does not restart at one year, but begins running at the place where it stopped before the post-conviction action was filed.

Once a federal statute of limitations has expired, it cannot be reinstated or resurrected by a later-filed state court action. *See Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) ("section 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed").

---

[2] *See Lawrence v. Florida*, 549 U.S. 327, 337 (2007). "Pending" is determined according to each particular state's law. In Idaho, an appellate case remains pending until a remittitur is issued. *See Cochran v. State*, 133 Idaho 205, 206, 984 P.2d 128, 129 (Idaho Ct. App. 1999).

MEMORANDUM DECISION AND ORDER - 8

### 2.  Statute of Limitations Calculation

Petitioner's direct review ended on April 18, 2018, which is 90 days after the Idaho Supreme Court entered its order denying review of the Idaho Court of Appeals' decision. State's Lodging B-6. At that time, the limitations period was statutorily tolled because Petitioner had already filed his pro se petition in the original post-conviction proceeding. *See* State's Lodging C-1 at 5-11. The tolling period ended on December 21, 2018, when the Idaho Supreme Court issued its remittitur after having granted Douglas's motion to voluntarily dismiss the original post-conviction appeal. State's Lodging D-3, D-4.

On December 22, 2018, the original post-conviction petition was no longer pending and the limitations period began running again. The statute of limitations expired on December 22, 2019. Thus, the Court concludes that the federal Petition filed on August 9, 2024, almost five years past the AEDPA deadline, is untimely.

Before the Court can dismiss a habeas petition under AEDPA's one-year statute of limitation, the petitioner must have an opportunity to establish that the petition is timely or the petitioner is entitled to additional statutory or equitable tolling. *Herbst v. Cook*, 260 F.3d 1039, 1043 (9th Cir. 2001). Petitioner was placed on notice that he must make any such argument in response to the Motion for Summary Dismissal.

### 3.  Statutory Tolling and Argument that Petition was "Properly Filed"

Because Petitioner's successive post-conviction petition was dismissed in state court on the grounds that it was "untimely," it was not a "properly filed" state post-conviction petition that would toll the AEDPA statute of limitations. *Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005). Time limits for filing state post-conviction petitions "are

MEMORANDUM DECISION AND ORDER - 9

'condition[s] to filing,' such that an untimely petition would not be deemed 'properly filed.'" *Id.* (citing *Artuz v. Bennett*, 531 U.S. 4, 8-11 (2000)). As a result, Petitioner is not entitled to statutory tolling unless he provides facts showing this conclusion is erroneous. He asserts that his successive petition *was* "properly filed" under 28 U.S.C. § 2244(d)(2).

## A. *Argument: Unpredictable, Amorphous Filing Deadline*

The Idaho statute permitting successive post-conviction petitions contains no timeliness requirement:

> All grounds for relief available to an applicant under this act must be raised in his original, supplemental or amended application. Any ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the applicant has taken to secure relief may not be the basis for a subsequent application, unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original, supplemental, or amended application.

I.C. § 19-4908. In *Charboneau v. State*, 174 P.3d 870 (2007), the Idaho Supreme Court determined that—as with successive petitions in capital cases brought under I.C. § 19-2719—in noncapital cases  brought under I.C. § 19-4908 "there should be a reasonable time within which such claims are asserted in a successive post-conviction petition, once those claims are known." *Id*. at 875 (analogizing to *Paz v. State*, 852 P.2d 1355, 1357 (1993)). Thus, since 2007, I.C. § 19-4908 has had a "reasonable time" limitation overlay imposed by the Idaho appellate courts.

In Petitioner's case the Idaho Supreme Court explained:

> Analysis of sufficient reason permitting the filing of a successive petition includes an analysis of whether the claims

> being made were asserted within a reasonable period of time. *Charboneau*, 144 Idaho at 905, 174 P.3d at 875. In determining what a reasonable time is for filing a successive petition, we will consider it on a case-by-case basis. *Id.* Therefore, the question is whether the petitioner filed the successive petition within a reasonable period of time after discovering the basis for the claims alleged in the successive petition.

*Douglas v. State*, No. 50001, 2024 WL 1928848, at *2 (Idaho Ct. App. May 2, 2024).

Petitioner argues that his successive petition should be deemed properly filed because the Idaho Court of Appeals "relied on a single inapposite case," *Charboneau*, to hold him to "a different, amorphous 'reasonableness' timeline." Dkt. 15 at 3. The Court construes this assertion as an argument that the timeliness decision is not an adequate state procedural bar to bringing his *Kastigar* claim, similar to the argument made in *Walker v. Martin*, 562 U.S. 307, 316 (2011) (*Martin*). To qualify as an "adequate procedural ground" that prevents a federal court from hearing a substantive federal claim arising from a state court criminal case, "a state rule must be firmly established and regularly followed." *Martin*, 562 U.S. at 316 (cleaned up). Here, this means the state timeliness procedural bar must be one that is "'clear, consistently applied, and well-established at the time of the petitioner's purported default.'" *See Martinez v. Klauser*, 266 F.3d 1091, 1093-94 (9th Cir. 2001) (quoting *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994)). A state procedural bar can be considered adequate if it is a discretionary rule, even though "the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." *Beard v. Kindler*, 558 U.S. 53, 61 (2009).

In *Martin*, the United States Supreme Court reviewed whether California's general timeliness requirement of "without substantial delay" was an adequate state ground upon

which to conclude that a federal claim was procedurally barred in federal court. 562 U.S.

at 312. Martin argued that the timeliness rule was not "firmly established" because terms

like a "reasonable time period" and "substantial delay" are "meaningless." *Id*. at 317

(cleaned up). The *Martin* Court disagreed, pointing to several examples of federal statutes

and case law that have employed time limitations that are not stated in "precise, numerical

terms." *Id*. at 318. The Court explained:

> The Ninth Circuit [wrongly] concluded that California's time
> bar is not consistently applied because outcomes under the rule
> vary from case to case. *See* 357 Fed. Appx., at 794. For
> example, in *People v. Fairbanks*, No. C047810, 2006 WL
> 950267, *2–*3 (Cal.App., Apr.11, 2006), a one-year delay was
> found substantial, while in *In re Little*, No. D047468, 2008 WL
> 142832, *4, n. 6 (Cal.App., Jan.16, 2008), a delay of 14 months
> was determined to be insubstantial.
>
> A discretionary rule ought not be disregarded automatically
> upon a showing of seeming inconsistencies. Discretion enables
> a court to home in on case-specific considerations and to avoid
> the harsh results that sometimes attend consistent application
> of an unyielding rule. *See Prihoda v. McCaughtry*, 910 F.2d
> 1379, 1385 (C.A.7 1990).

*Id*. at 319–20.

The *Martin* Court concluded that California decisions adequately instruct state

habeas petitioners to "'alleg[e] with specificity' the absence of substantial delay, good

cause for delay, or eligibility for one of four exceptions to the time bar."). 562 U.S. at 317.

Similarly, Idaho's successive post-conviction "sufficient reason" statute with its

"reasonable time" case law overlay is not unpredictable merely because it is nonspecific.

The Idaho Supreme Court has defined "a reasonable time" for filing a successive petition

as whether the petitioner acted diligently "from the date of notice, not from the date a

petitioner assembles a complete cache of evidence." *Charboneau*, 174 P.3d at 875. Since 2007, Idaho petitioners have been on notice that whether their own case filing will qualify for *a reasonable time* will be considered "on a case-by-case basis." *Id*. So stated, the Idaho timeliness rule should prompt attorneys and petitioners to raise their claims as soon as reasonably possible, rather than later.

Petitioner argues that—because the initial statutory post-conviction petition limitations period is one-year—one year should be a benchmark for determining a "reasonable time" to bring a successive petition. The Idaho Court of Appeals applied that reasoning in *Hernandez v. State*, 992 P.2d 789 (Ct. App. 1999): "We … find the one-year limitation period contained in I.C. § 19–4902 instructive as to what constitutes a reasonable time within which to file a successive post-conviction relief action." *Id*. at 794. The Court of Appeals found that "[a]lthough Hernandez waited almost one year from the Supreme Court's decision on appeal in the initial post-conviction matter, under the facts of this case, such a period was a reasonable time." But *Hernandez* was decided two decades before Petitioner's filing and was superseded by additional case law well before Petitioner's filing.

A key fact was that Hernandez's initial post-conviction counsel had not been diligent in presenting Hernandez's claim. However, in *Murphy v. State*, 327 P.3d 365, 372 (2014), the Idaho Supreme Court retreated from that reasoning: "In sum, we do not recognize an independent right to effective assistance of counsel during post-conviction proceedings. We overrule *Palmer v. Dermitt,* 102 Idaho 591, 635 P.2d 955 (1981), and hold that ineffective assistance of post-conviction counsel is not a sufficient reason under I.C. § 19–4908 for allowing a successive petition." While the *Murphy* decision was based

MEMORANDUM DECISION AND ORDER - 13

on the overall "sufficient reason" factor rather than the narrower *reasonable time* factor,

the *Murphy* decision is consistent with Petitioner's case: the diligence of a petitioner in

raising claims is based on when they were first discovered.

In *Oser v. State*, No. 41249, 2014 WL 1494233 (Idaho Ct. App. Apr. 15, 2014)

(unpubl.), the Idaho Court of Appeals specifically stated that *Hernandez* was limited to its

facts (and, as noted above, *Murphy* essentially overruled *that* set of facts as grounds for the

"sufficient reason" for the filing of a successive petition):

> Oser argues that the seven months which elapsed between the disposition of his failed appeal of the summary dismissal of his first successive petition and the filing of his second successive petition was reasonable because the second successive petition was filed within one year. Oser cites to *Hernandez* and *Charboneau* for support of this proposition. However, in *Hernandez* we did not establish a rule that successive petitions for post-conviction relief are per se timely if filed within one year of the determination of an appeal in the most recent prior post-conviction action. Instead, we determined only that, under the circumstances specific to *Hernandez,* one year was a reasonable time for filing a successive petition where the initial action was dismissed due to alleged ineffective assistance of post-conviction counsel. *Hernandez,* 133 Idaho at 799, 992 P.2d 794.

*Id*. at *2.

Along with the *Hernandez* decision (holding almost one year was reasonable),

Petitioner and his counsel had newer, superseding guidance in the *Charboneau* decision

(holding (1) thirteen months was *not* reasonable and (2) a case-by-case analysis would be

used thereafter) and *Schwartz v. State*, 177 P.3d 400, 405 (Ct. App. 2008), where the court

determined under *Charboneau* that almost twelve months was *not* a reasonable time:

MEMORANDUM DECISION AND ORDER - 14

> As noted above, determining what is a reasonable time for filing a successive application is to be done on a case-by-case basis. *See Charboneau*, 144 Idaho at 905, 174 P.3d at 875. On May 3, 2005, the district court denied Schwartz's motion to extend the filing time based on attorney Parrish's admitted failure to file an initial application within the limitation period. Schwartz was informed at that time that her letter and subsequent filings had not extended the limitation period and that the district court would not grant her an extension of time to file an initial application. Schwartz, however, waited until April 26, 2006—almost twelve months.

The foregoing review of case law does not support Petitioner's view that *Charboneau* was "inapposite" or the Idaho Court of Appeals applied a "different, amorphous" reasonableness standard. *Hernandez*, as precedent for the principle that one year is a benchmark for "a reasonable time" for non-capital cases was essentially overruled by *Oser*. *Schwartz* and *Charboneau* reflected current Idaho precedent a decade before Petitioner and his counsel would have performed their case review to determine what "a reasonable time" meant in 2018. *Martin* cemented the legal rule that a variable timeliness rule is not necessarily an inadequate rule.

The state case law cited above shows that, since 2007, the Idaho appellate courts carefully assess the timing of each filing on a case-by-case basis, beginning with the earliest time a petitioner knew of the claim. Applied in this manner, the Idaho rule was an adequate state procedural bar that was firmly established and regularly followed between 2007 and 2018. Because the facts were known to Petitioner and his counsel three years before the successive petition was filed and ten months after the *Robins* decision, and no extraordinary circumstances caused the delay in filing, this Court concludes that the Idaho Court of Appeals did not apply a "different, amorphous" reasonableness timeliness requirement

MEMORANDUM DECISION AND ORDER - 15

when it reached its conclusion that the claim was untimely.

### B. *Argument: State Court Subterfuge to Evade Federal Review*

Petitioner also asserts that the Idaho Court of Appeals' conclusion that his successive petition was untimely was an "obvious subterfuge" to avoid federal review of the *Kastigar* issue. Because the state courts "are the ultimate expositors of state law," a federal court is bound by a state court's interpretation of state law unless the interpretation is untenable or amounts to an obvious subterfuge to avoid federal review of a constitutional violation. *Mullaney v. Wilbur*, 421 U.S. 684, 691 n.11 (1975) (*Wilbur*). A "subterfuge" is evident where the particular interpretation of the statutory scheme "frustrate[s] consideration of the [federal] issue," *Wilbur*, 421 U.S. at 691 n.11; this finding occurs only in a "highly unusual case," *Butler v. Curry*, 528 F.3d 624, 642 (9th Cir. 2008). A "subterfuge" may be present if a state court's interpretation of the statute is inconsistent with the statute itself or prior case law. *Id*.

In *Wilbur*, the federal district court found that the state court's statutory interpretation was not a subterfuge because, "even assuming [the interpretation] to be novel, [it] does not frustrate consideration of the due process issue." *Id*. *Wilbur* cited *Terre Haute & I. R. Co. v. Indiana ex rel. Ketcham*, 194 U.S. 579, 589, (1904), as an example of the rare case where an untenable interpretation *did* amount to a subterfuge, concluding that the state supreme court wrongly interpreted a railroad charter by "relying on unconstitutional legislation." *Id*. at 689. The United States Supreme Court opined that a federal court could not "decline jurisdiction of a case which certainly never would have been brought but for the passage of flagrantly unconstitutional laws." *Id*. at 589.

In *Peltier v. Wright*, 15 F.3d 860 (9th Cir. 1994), the United States Court of Appeals for the Ninth Circuit considered and refused to apply the "obvious subterfuge" exception. In that case, Peltier alleged that the Idaho state district court violated his federal double jeopardy rights by first ordering five years' probation and sixty days' imprisonment in the county jail but later imposing a sentence of twenty years imprisonment upon revocation of probation. There was an inconsistency between the written order and the oral pronouncement of judgment. The Idaho Supreme Court reviewed this issue and found that the at-issue sixty-day period spent in the county jail was a condition of probation under a withheld judgment and not part of Peltier's sentence. The Ninth Circuit held that Idaho's interpretation of whether the state order constituted a withheld judgment or a sentence was a question of state law, and there was no subterfuge evident in the record that would permit the federal court to re-determine that issue. *Id*. at 861-62. The Ninth Court reviewed the double jeopardy issue using the Idaho Supreme Court's interpretation of Peltier's judgment and held that if the federal courts could use the same type of sentencing scheme without transgressing double jeopardy principles, so could the state courts. *Id*. at 862.

Here, Petitioner asks this Court to review whether the Idaho appellate courts obviously misapplied the "reasonable time" standard to purposely prevent him from being able to present his *Kastigar* claim in federal court. First, I.C. § 19-4908 is not "flagrantly" unconstitutional. *Cf. Martin*, 562 U.S. at 319-20 (analysis of similar California statute, discussed below).

Second, the statute was not applied in an unconstitutional manner. The Idaho Court of Appeals' reasoning behind the conclusion of untimeliness is consistent with Petitioner's

own substantive argument contained in the successive post-conviction petition: Petitioner and his attorneys knew of the underlying facts and law as early as 2015, when Robins filed his motion in their consolidated case. The reasoning is also consistent with *Charboneau* and *Schwartz*. Even after the final *Robins* decision was issued, Petitioner still waited 10 months to file his successive petition, with no external cause for the delay.

Petitioner argues that the Idaho Court of Appeals "interpreted the chronology" of his case "in an irrational way" to reach its result, but the timeline above shows there was no need to wait until Robins won his appeal; the claim was evident to Petitioner and his counsel in 2015. The Idaho Court of Appeals explained that the issuance of the *Robins* decision on appeal "did not announce a new substantive rule of constitutional law or give rise to a new claim for Douglas"; instead, it merely announced the remedy Robins would be entitled to. State's Lodging F-4 at 6.

Finally, the successive petition also could have been filed shortly after August 2018, with a request for leave to amend at a later time when counsel had obtained "a complete cache of evidence." *See Charboneau*, 174 P.3d at 875.

### 4. Equitable Tolling Application

Beyond statutory tolling, a federal court can hear a late claim if the petitioner can establish that "equitable tolling" should be applied. In *Pace v. DiGuglielmo*, the Court clarified that,"[g]enerally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." 544 U.S. at 418. To qualify for

equitable tolling a circumstance must have *caused* Petitioner to be unable to file his federal Petition in time.

"The diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'" *Holland v. Florida*, 560 U.S. 631, 653 (2010) (citations omitted). The Ninth Circuit continues to rely on previous equitable tolling cases that hold equitable tolling is available "only when extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time and the extraordinary circumstances were the cause of the prisoner's untimeliness." *Sossa v. Diaz*, 729 F.3d 1225, 1229 (9th Cir. 2013) (cleaned up). The petitioner bears the burden of bringing forward facts to establish a basis for equitable tolling. *United States v. Marolf*, 173 F.3d 1213, 1318, n. 3 (9th Cir. 1999).

In this case, the facts found by the district court show that attorney oversight or negligence is the reason that Petitioner's *Kastigar* claim was not properly presented to the state courts. The trial attorneys attended the hearing held on the Robins' Motion in 2015, but failed to join or file a motion on Petitioner's behalf. Initial post-conviction counsel did not recognize the issue as one that should be included in the initial post-conviction petition in 2018. When counsel in the successive post-conviction matter reviewed the issue, he did apparently did not recognize that untimeliness might be an issue with the timeline he followed for filing the successive petition.

The United States Supreme Court has held that "a garden variety claim of excusable neglect," such as a simple miscalculation that leads a lawyer to miss a filing deadline, does not equal "extraordinary circumstances." *Holland*, 560 U.S. at 651–52 (cleaned up). Only

MEMORANDUM DECISION AND ORDER - 19

where far more serious instances of attorney misconduct occur, such as where an attorney essentially abandoned a client, may equitable tolling be warranted. *Id*. at 651-53. *See also Frye v. Hickman,* 273 F.3d 1144, 1146 (9th Cir.2001), *cert. denied,* 535 U.S. 1055 (2002) ("conclud[ing] that the miscalculation of the limitations period by ... counsel and his negligence in general do not constitute extraordinary circumstances sufficient to warrant equitable tolling."); *Miranda v. Castro*, 292 F.3d 1063, 1068 (9th Cir. 2002) ("because Miranda had no right to the assistance of his appointed appellate counsel regarding post-conviction relief, it follows that he did not have the right to that attorney's 'effective' assistance, either").

Here, Petitioner's original post-conviction counsel should have raised the *Kastigar* issue as an ineffective assistance of trial counsel claim. The untimeliness in Petitioner's case clearly is due to garden-variety attorney oversight or negligence, at the most. Such oversight or neglect is attributable to the client. The Court sees no other factual grounds for extraordinary circumstances or equitable tolling.

### 5.  Actual Innocence Exception Application

The United States Supreme Court has determined that there is an "actual innocence" exception to the AEDPA statute of limitations. *See McQuiggin v. Perkins*, 569 U.S. 383, 387 (2013). To qualify for the exception, the petitioner "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id*. at 397 (quoting *Schlup v. Delo*, 513 U.S. at 327). "Unexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing." *Id*. at 399. In other words, a petitioner's diligence should not be

considered "discretely, but as part of the assessment whether actual innocence has been convincingly shown." *Id.*

Petitioner has made no claim of actual innocence. The Court sees no factual grounds for this argument apparent from the record. Accordingly, this exception does not apply. Having determined that the federal Petition is untimely and no excuse for the untimeliness is evident from the record, the Court must dismiss the Petition with prejudice.

## ORDER

**IT IS ORDERED:**

1.    Respondent's Second Motion for Extension of Time to Answer (Dkt. 8) is GRANTED.

2.    Petitioner's Motion to Appoint Counsel (Dkt. 12) is DENIED.

3.    Petitioner's Motion for Extension of Time to File Response (Dkt. 13) is GRANTED. Petitioner's Response is timely and has been fully considered.

4.    Respondent's Motion for Summary Dismissal (Dkt. 10) is GRANTED on federal statute of limitations grounds.

5.    The Petition for Writ of Habeas Corpus (Dkt. 1) is DISMISSED with prejudice.

6.    The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. See 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner files a timely notice of appeal, the Clerk of Court shall forward a copy of the

notice of appeal, together with this Order, to the United States Court of Appeals for the Ninth Circuit. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: March 9, 2026

David C. Nye
U.S. District Court Judge